

**ORIGINAL**

Andrew T. Hahn, Esq. (AH-6283)
SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Peter S. Brooks (To be admitted *pro hac vice*)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

Attorneys for Plaintiff Travel Sentry

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GLEESON, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAY 13 2005

★ BROOKLYN OFFICE ★

MATSUMOTO, M.J.

---------------------------------------------------------x
                                          :
TRAVEL SENTRY, INC.,                      :
                                          :
              Plaintiff,                  :   Civil Action No.
                                          :
       vs.                                :
                                          :   **COMPLAINT**
DAVID A. TROPP and SAFE SKIES, LLC,       :
                                          :
              Defendants.                 :   **JURY TRIAL DEMANDED**
                                          :
---------------------------------------------------------x

1.      This is an action by Travel Sentry, Inc. ("Travel Sentry" or "Plaintiff") against

David A. Tropp and his company Safe Skies, LLC ("Tropp" or "Defendants") for injunctive and

declaratory relief and damages arising out of Tropp's violations of the Lanham Act, false and

defamatory statements, unfair competition, and intentional interference with contractual and

advantageous relations.

### PARTIES

2.      Travel Sentry is a corporation organized and existing under the laws of the State

of Florida and has a usual place of business at 2228 Fountain Key Circle, Suite 100,

Windermere, Florida.

3.     Tropp is an individual who, upon information and belief, resides at 165 Norfolk Street, Brooklyn, New York.

4.     Safe Skies is, upon information and belief, a limited liability company organized under the laws of the State of New York and has a usual place of business at 165 Norfolk Street, Brooklyn, New York.

## JURISDICTION AND VENUE

5.     This Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1332 in that Plaintiff and Defendants are citizens of different states, the amount in controversy exceeds the sum of $75,000, and a federal question is presented because there are claims arising under the Lanham Act, 15 U.S.C. §1125

6.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391 in that Defendants are residents of this judicial district.

## FACTS GIVING RISE TO THE ACTION

7.     Travel Sentry is the developer, manufacturer, and distributor of a luggage locking system recognized and accepted by the Transportation Security Administration ("TSA") of the U.S. Department of Homeland Security.  Under the program developed by Travel Sentry, luggage locks have been manufactured that may be opened with a series of master pass keys that Travel Sentry has supplied to the TSA.

8.     Travel Sentry has entered into a series of agreements with lock manufacturers to produce luggage locks.  Each of the locks contains the Travel Sentry trademark that is recognized by TSA officials.  The locks may be opened easily for inspection using special Travel Sentry key sets.  Travel Sentry has provided these key sets free of charge to the TSA throughout

-2-

the United States so as to allow airline passengers to lock their luggage and still allow TSA security officials to open the luggage for inspection.

9.   The Travel Sentry locks have been readily accepted by TSA and the Travel Sentry system has received widespread acclaim in the travel industry. Travel Sentry was awarded the product innovation of the year award by the Travel Goods Association.

10.   Travel Sentry has begun the process of introducing the Travel Sentry locking system to other government and security agencies around the world to ultimately allow airline passengers to travel anywhere in the world with locked luggage that can be opened and inspected by authorized government officials.

11.   In September of 2003, Travel Sentry and the TSA entered into a memorandum of understanding setting forth the terms by which Travel Sentry would provide the TSA with the key sets for TSA to distribute to field locations. The memorandum of understanding was authorized under the provisions of the Aviation and Transportation Security Act, now codified as 49 U.S.C. § 114(m) and 49 U.S.C. § 106(m).

12.   Travel Sentry has entered into a series of agreements with luggage lock manufacturers for the manufacture and sale of Travel Sentry luggage locks and has entered into a series of agreements with luggage manufacturers and distributors for licenses to sell the Travel Sentry locks. Travel Sentry has expended huge sums of money to develop the relationships with the luggage lock manufacturers and luggage manufacturers and distributors to gain acceptance of the TSA accepted and recognized locks.

13.   In September of 2003, Defendant Tropp distributed a memorandum to the TSA, with copies to several public officials, including the secretary of the Department of Homeland Security, and to several newspapers and to customers of Travel Sentry. The memorandum, a

-3-

copy of which is annexed hereto as Exhibit "A," claims that Tropp was the original developer of
the locking system employed by Travel Sentry and asserts that his idea was misappropriated by
Travel Sentry. Tropp requested an official investigation and asked that TSA delay
implementation of the Travel Sentry program.

14.      Shortly after the memorandum to the TSA, Tropp authored another memorandum
to a number of luggage manufacturing companies in the United States, including Samsonite
Corporation, Eastern Company, Brookstone Company and Atlantic Luggage Company. Tropp
restated the allegations made previously to the TSA that he was the original developer of the
concept of the locking system proposed by Travel Sentry and Tropp claimed proprietary rights to
the concept. Tropp asserted that his intellectual property was being violated and the
memorandum was clearly intended to discourage or dissuade the recipients from engaging in
business with Travel Sentry.

15.      In November of 2003 Travel Sentry received a letter from Tropp's counsel in
which it is asserted that Travel Sentry's managing director had access to Tropp's innovation and
asserts that the innovation was misappropriated by Travel Sentry. The letter also suggests that
Tropp has applied for patent protection for his locking system and suggests that Travel Sentry
will either be engaging in patent infringement or will be doing business with those engaged in
patent infringement. A copy of the November, 2003 letter from Tropp's counsel to Travel
Sentry is annexed hereto as Exhibit "B."

16.      Subsequently, Tropp's counsel began to communicate directly with Travel
Sentry's customers, alleging that Travel Sentry had misappropriated Tropp's proprietary idea and
claiming that the Travel Sentry lock concept is the same idea submitted by Tropp to TSA. Tropp
demanded that these luggage manufacturers and distributors cease and desist from any further

-4-

implementation of the Travel Sentry project. See Exhibit "C." The letter from Tropp's counsel to one customer, CCL, states in relevant part, "Furthermore, when Mr. Tropp's United States patent on his invention is issued, as we expect it to, CCL will be engaging in direct or contributory patent infringement." Id. at 3.

17.    In response to these various communications by Tropp and his counsel seeking to interfere with Travel Sentry's contractual and advantageous relations with third parties, numerous demands were made on Tropp, by Travel Sentry and others, for any evidence of the prior presentation of this concept to the TSA. The records of the TSA did not reveal any communication of Tropp's ideas to the TSA before the development of the project by Travel Sentry. Travel Sentry and some luggage and travel accessory manufacturers or distributors repeatedly requested that Tropp provide the documentary evidence that Tropp had any legally protected right to the exclusive development of this concept. Despite these repeated demands, Tropp has failed and refused to produce any such evidence.

18.    Tropp has continued to communicate to third parties, including customers and prospective customers of Travel Sentry, that he was the original inventor of a TSA-approved locking system, that Travel Sentry misappropriated his concept, and that he would soon have patent protection that would put Travel Sentry out of business. Tropp went so far as to personally contact officers and employees of Brookstone, at their homes and at business and continued to disseminate false and defamatory statements concerning Travel Sentry.

19.    Tropp has published false and defamatory statements concerning Travel Sentry to a number of Travel Sentry customers and potential customers, including Samsonite Corporation, TGA (the Travel Goods Association), Atlantic Luggage, and the Northern Company. Tropp has repeatedly communicated false and defamatory statements to the TSA concerning Travel

-5-

Sentry's alleged misappropriation of his proprietary concept and has sought to cause the TSA to discontinue its use of the Travel Sentry locking system.

20.     As a result of the false accusations of Tropp, the TSA conducted an internal investigation into those allegations. Upon information and belief, the TSA determined that Tropp's allegations were entirely baseless.

21.     Recently, the false allegations by Tropp have escalated. A company known as Travelpro, Inc. ("Travelpro") now purports to be the exclusive distributor of the "original" TSA-approved lock designed by Tropp. Travelpro, who claims to be the agent of Tropp and Safe Skies, has represented that a patent is about to be issued to Safe Skies that will put Travel Sentry out of business and will require that all of the existing Travel Sentry locks be destroyed. Travelpro informed one customer of Travel Sentry that it would soon be receiving a cease and desist letter from Safe Skies. Further, Travelpro, as the agent for Tropp and Safe Skies, falsely represented that Tropp had commenced litigation against Travel Sentry for the alleged misappropriation of his proprietary idea and falsely represented that Travel Sentry had made an offer of settlement in that litigation. In fact, Tropp has not commenced any litigation against Travel Sentry, which certainly has not had any communications with Tropp concerning any settlement. Tropp has continued to assert to luggage and accessory manufacturers and distributors in the United States that he was the original inventor of the locking system employed by the TSA today and that Travel Sentry misappropriated the concept. At the time Travelpro represented that Tropp was soon to receive a patent for his invention in fact, Tropp's application for a patent has been rejected by the United States Patent Office.

22.     As a result of the false and defamatory statements made by Tropp, several luggage and accessory manufacturers or distributors may have declined to do business with

-6-

Travel Sentry. Upon information and belief, the decisions not to purchase and sell the Travel Sentry locks has been made out of fear of legal liability based on the allegations that Tropp has made.

23. Tropp has caused and is continuing to cause substantial and irreparable harm and damage to Travel Sentry's reputation and good will in the travel and luggage industry. Travel Sentry has no plain and adequate remedy at law to redress the harm that Tropp has caused and is continuing to cause to its business.

## COUNT I
(Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125)

24. Travel Sentry repeats and realleges paragraphs numbered 1 through 22 as if fully set forth herein.

25. The aforementioned false representations that (i) Tropp was the inventor of the dual custody locking device (called by Tropp the Liberty Lock); (ii) he was about to be issued a patent that will put Travel Sentry out of business; (iii) he will require luggage and accessory manufacturers and distributors to destroy all of the locks that they have purchased; (iv) he has instituted litigation against Travel Sentry; and (v) that Travel Sentry has made a settlement proposal to him, created and were intended to create confusion, mistake, and deception among potential licensees and customers in the trade, and to divert potential licensees and customers of Travel Sentry.

26. Tropp made the false representations to deceive Travel Sentry's licensees and customers, and has influenced their purchasing decisions.

27. Tropp caused the false representations to enter interstate commerce.

28. The foregoing false representations were made in bad faith in that Tropp was not, and knew he was not, inventor of dual custody locking device, knew that a patent was not going

to be issued, and knew he did not commence litigation against Travel Sentry.

29.     By virtue of the foregoing, Tropp is liable to Travel Sentry for the damages that Travel Sentry has sustained as a result of Tropp's violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125. In addition, Travel Sentry is entitled to injunctive relief to restrain and enjoin Tropp for making these false and defamatory claims in the future.

## COUNT II
(Defamation)

30.     Travel Sentry repeats and realleges paragraphs numbered 1 through 28 as if fully set forth herein.

31.     Tropp has published and is continuing to publish false and defamatory statements concerning Travel Sentry. Specifically, Tropp has falsely asserted that Travel Sentry misappropriated Tropp's original and proprietary luggage locking concept from the TSA. In fact, the dual custody locking concept is well established prior art (there are patents from the 1950's for dual custody locker locks and for luggage). Further, the concept of sets of so called master keys for luggage is well established in the airline business. At no time did Travel Sentry ever receive any materials or information concerning Tropp or any idea or invention developed by Tropp. Before the memorandum to the TSA in September of 2003, the principals of Travel Sentry had never even heard of David Tropp.

32.     Tropp has also, either directly or through agents, published false and defamatory statements that he has commenced litigation against Travel Sentry and that Travel Sentry has offered to settle the claims made by Tropp. In fact, Travel Sentry is not aware of any litigation commenced anywhere by Tropp against it and certainly has not had any communications with Tropp concerning such litigation, much less made an offer of compromise.

33.     The false and defamatory statements made by Tropp have caused substantial harm

-8-

and damage to Travel Sentry. Upon information and belief, some luggage and accessory distributors have declined to carry the Travel Sentry locks because of the unfounded claims of Tropp. Travel Sentry has lost potential profits of several hundred thousand dollars as a result of Tropp's publication of false and defamatory statements concerning Travel Sentry.

34.    Travel Sentry has also suffered irreparable harm for which there is no adequate remedy at law. The damage to Travel Sentry's name, reputation and good will in the travel goods industry is not readily quantifiable.

35.    By virtue of the foregoing, Tropp is liable to Travel Sentry for the damages that Travel Sentry has sustained as a result of Tropp's defamation of Travel Sentry. In addition, Travel Sentry is entitled to injunctive relief to restrain and enjoin Tropp for making these false and defamatory claims in the future.

## COUNT III
(Tortious Interference with Contractual Relations)

36.    Travel Sentry repeats and realleges paragraphs numbered 1 through 34 as if fully set forth herein.

37.    Travel Sentry has contracts with a number of luggage and travel accessory manufacturers and distributors, including Samsonite Corporation, Brookstone, and CCL.

38.    Tropp has published false and defamatory statements concerning Travel Sentry to the customers of Travel Sentry for the purpose of interfering with Travel Sentry's contracts. As a result of Tropp's actions, some customers have required that Travel Sentry provide indemnity or other protection to the customer. Thus, Tropp's allegations have caused actual and prospective financial loss to Travel Sentry as a result of his intentional interference with Travel Sentry's contractual relations with its customers.

39.    By virtue of the foregoing, Tropp is liable to Travel Sentry for the damages that

Travel Sentry has sustained as a result of his intentional interference with Travel Sentry's contractual relations. In addition, Travel Sentry is entitled to injunctive relief to restrain and enjoin Tropp from making false and defamatory statements concerning Travel Sentry in the future.

## COUNT IV
(Interference with Advantageous Business Relations)

40.     Travel Sentry repeats and realleges paragraphs numbered 1 through 38 as if fully set forth herein.

41.     Tropp has made false, disparaging and/or defamatory comments concerning Travel Sentry's business and practices for the purpose of causing injury to Travel Sentry's business and its relationships with prospective customers.

42.     Travel Sentry has sought to enlist a number of luggage and travel accessory manufacturers and distributors to sell the Travel Sentry locks under a proposed license arrangement. Some distributors have declined to enter into a business relationship with Travel Sentry. Upon information and belief, the allegations made by Tropp concerning Travel Sentry have dissuaded some luggage and travel accessory distributors from carrying Travel Sentry locks. The foregoing malicious conduct by Tropp had no legitimate business purpose.

43.     By virtue of the foregoing, Tropp is liable to Travel Sentry for the damages that Travel Sentry has sustained as a result of Tropp's intentional interference with Travel Sentry's prospective advantageous business relations.

## COUNT V
(Violation of N.Y. Gen. Bus. Law Section 349)

44.     Travel Sentry repeats and realleges paragraphs numbered 1 through 42 as if fully set forth herein.

-10-

45.     Travel Sentry has developed a reputation for having created an innovative solution to the conflict between a passenger's desire to lock his/her luggage and the TSA requirements of easy access to luggage for inspection. Travel Sentry has expended thousands of dollars developing its brand and trademark and market acceptance for its locking devices.

46.     Tropp has engaged in deceptive trade acts or practices by claiming that Travel Sentry misappropriated his idea for a locking system from the TSA and falsely claiming that he has proprietary rights to a locking system that will put Travel Sentry out of business.

47.     Tropp has engaged in deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

48.     Travel Sentry has been injured by reason of Tropp's violation of this statute.

49.     In addition, Tropp's action has harmed the general public and the citizens of New York when the TSA, a regulatory agency that is primarily concerned with the safety and security of the traveling public, had to undertake an unnecessary investigation of Tropp's false claims. Such unnecessary investigation by the TSA also interfered with its decision making process and may have caused an unnecessary disruption to the memorandum of understanding between Travel Sentry and the TSA.

## COUNT VI
### (Unfair Competition)

50.     Travel Sentry repeats and realleges paragraphs numbered 1 through 48 as if fully set forth herein.

51.     Defendant Tropp has engaged in acts of unfair competition by knowingly and intentionally taking the skill, expenditures, and labors of Travel Sentry, thereby causing damage to Travel Sentry's business relationship with its current and prospective customers. Such actions

-11-

committed by Tropp constitute commercially immoral acts that are improper and constitute unfair competitive acts and trade practices in New York and elsewhere.

52.     As stated above, Travel Sentry has expended thousands of dollars developing its brand and trademark and market acceptance for its locking devices. Tropp has misappropriated Travel Sentry's efforts by claiming the locking devices as his own intellectual property.

### COUNT VII
(Declaratory Relief)

53.     Travel Sentry repeats and realleges paragraphs numbered 1 through 51 as if fully set forth herein.

54.     Tropp claims to be the original inventor of a proprietary luggage locking system known as the Liberty Lock. Tropp claims that his rights to this invention are proprietary and that he soon will be issued a patent by the United States Patent Office for this invention. Tropp further claims that Travel Sentry misappropriated Tropp's proprietary information from the TSA and that Travel Sentry does not have the legal right to license the manufacture or distribution of locking devices accessible by a master key.

55.     Travel Sentry denies that it misappropriated any idea, concept, or other proprietary information of Tropp, from the TSA or otherwise. Travel Sentry maintains that the concept of a lock that is accessed by a master key is neither new nor proprietary to anyone and Travel Sentry denies that Tropp has or could invent any concept for a locking system that would preclude the continuing manufacturer and distribution of Travel Sentry locks.

56.     There is a genuine and ripe controversy between Travel Sentry and Tropp concerning their respective rights and obligations.

57.     Pursuant to 28 U.S.C. § 2201, Travel Sentry requests that this Court declare and adjudge the rights and obligations of Tropp and Travel Sentry with respect to the sale and

marketing of TSA-accepted and recognized locks, including a declaration that Travel Sentry did not appropriate any proprietary information or concept of Tropp.

## COUNT VIII
(Permanent Injunction)

58.     Travel Sentry repeats and realleges each and every allegation set forth in paragraphs 1 through 56 as if fully set forth herein.

59.     Travel Sentry seeks to permanently enjoin Tropp from further communicating that Travel Sentry misappropriated Tropp's proprietary invention of a locking system from the TSA.

60.     Travel Sentry will suffer irreparable injury in the absence of such an injunction because Travel Sentry's reputation and goodwill with its customers will continue to be injured by Tropp's false and malicious communications.

61.     In addition, the issues of whether Travel Sentry has been injured by Tropp's defamation, tortious interference with contractual relations, and unfair competition raise sufficiently serious questions going to the merits of the claims in the underlying dispute making them a fair ground for litigation.

62.     Furthermore, if Tropp is enjoined from his improper actions, he will not suffer any harm. As such, a balance of the equities tips decidedly in favor of granting the injunction.

63.     Accordingly, Travel Sentry is entitled to a judgment permanently enjoining Tropp from communicating that Travel Sentry misappropriated Tropp's proprietary invention of a locking system from the TSA

## RELIEF REQUESTED

WHEREFORE, Plaintiff Travel Sentry, Inc. respectfully requests:

a.     That the Court find and adjudge that Defendants are liable to Travel Sentry for the damages that Travel Sentry has sustained as a result of Tropp's violation of Section 43 of the

-13-

Lanham Act, defamation, intentional interference with contractual relations, intentional interference with prospective advantageous relations, and unfair competition, in an amount to be determined, together with interest, costs, and attorneys' fees;

     b.     That the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and in the exercise of its general equity jurisdiction, enjoin Defendants, their agents, servants, employees, attorneys and all those acting or purporting to act on their behalf from making, publishing, distributing, or otherwise communicating any statement that Travel Sentry wrongfully appropriated Tropp's invention or concept for a luggage locking system acceptable to the Transportation Security Administration;

     c.     That the Court, pursuant to 28 U.S.C. § 2201, declare the rights and obligations of the parties and, specifically, declare that Travel Sentry did not appropriate any proprietary information or concept of Tropp; and

     d.     The Court grant such other and further relief as it deems just and appropriate.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: New York, New York        **SEYFARTH SHAW LLP**
      May 13, 2005

          Andrew T. Hahn (AH-6283)
          1270 Avenue of the Americas
          Suite 2500
          New York, New York 10020-1801
          Telephone: (212) 218-5500
          Facsimile: (212) 218-5526

          Peter S. Brooks (To be admitted *pro hac vice*)
          SEYFARTH SHAW LLP
          World Trade Center East
          Two Seaport Lane, Suite 300
          Boston, MA 02210-2028
          Telephone: (617) 946-4800
          Facsimile: (617) 946-4801

**David A. Tropp,
Inventor,
The Liberty Lock**

# Memorandum

| | |
|---|---|
| **To:** | Kimberly Hubbard Walton, Ombudsman, TSA |
| **CC:** | Christopher Cox, Chairman, US House of Representatives Committee on Homeland Security |
| | John L. Mica, Chairman, US House of Representatives Committee on Aviation |
| | Tom Davis, Chairman, US House of Representatives Committee on Government Reform |
| | General Accounting Office • FraudNET |
| | Clark Kent Ervin, Acting Inspector General, DHS |
| | Admiral James M. Loy, Administrator, TSA |
| | Tom Ridge, Secretary, DHS |
| | Steven McHale, Deputy Administrator, TSA |
| | Carol DiBattiste, Chief of Staff, TSA |
| | Gordon England, Deputy Secretary, DHS |
| | Audrey Warren, Writer, Wall Street Journal |
| | Barbara De Lollis, Writer, USA TODAY |
| | Anne DeCicco, President, Travel Goods Association |
| | Nora Alonso, Marketing Director, Samsonite Corporation |

**Date:** September 30, 2003

---

Ms. Walton-

I hereby request that your office begin an official investigation into the TSA's Travel Sentry project and its origins, specifically in relation to an identical concept that I submitted to the TSA, entitled The Liberty Lock. I insist that this investigation center on being fair and equitable and concentrate on a just solution to this problem. My idea was submitted to the TSA months before the Travel Sentry project was contemplated or took shape – and I can prove it. I have also requested that The Chairman of the House Committee on Homeland Security, The Chairman of the House Committee on Aviation, The Chairman of the House Committee on Government Reform, the FraudNET Department of the GAO, as well as the Acting Inspector General of the Department of Homeland Security, all begin investigations into the TSA's Travel Sentry project and how it relates to my innovative concept.

I realize that the TSA is a young agency, and its mission is crucial to our nation's defense. In the course of carrying out its mission, I can understand how an overburdened agency, such as the TSA, could

1

overlook certain issues. That is exactly why I am attempting to give my government a fair opportunity to resolve this issue, in order to be fair and in light of the seriousness of my allegations, I am asking that the launch of the Travel Sentry project, currently set for November 12, 2003, be delayed, at least until I am afforded an opportunity to substantiate my allegations.

## Background

I can prove that my concept, The Liberty Lock, was submitted to the TSA long before the Travel Sentry project was set into motion. The value-added function of my lock is that TSA screeners could use a universal key to access travelers' luggage; therefore eliminating the need to clip travelers' baggage locks. Through a program the TSA has for vendors, industry groups, and private citizens, I submitted my idea. The date of my submittal occurred many months before the TSA and The Travel Goods Association hatched the Travel Sentry project. I offered to co-develop this lock and its universal key with the TSA.

I was sent a letter from an administrator at the TSA acknowledging my "innovative" baggage lock concept. I also have several follow-up emails from a TSA employee acknowledging that while my lock and its universal key were novel concepts, the TSA had no need for them at that point. I was told that I would be contacted if the "TSA was to breath new life in this project."

I was definitely surprised then to read in an article in the Wall Street Journal (August 20, 2003) that a lock with identical features to mine was being approved by the TSA for use. I was quite flattered to see that my idea was a winner, but quite disappointed to see that I was not involved in my project's implementation. I wish to highlight the fact that I have sent a carbon copy of this memo to Audrey Warren, the writer of that article, entitled "Luggage Lockup." I have also sent a carbon copy of this memo to Barbara De Lollis, writer of another article mentioning the Travel Sentry Project, "Even how you secure luggage has changed," published in USA Today on July 29, 2003.

I have documents and drawings detailing my concept and the conception date. I have witnesses willing to speak out on my behalf. I have documents signed by witnesses, which are dated, and which state "witnessed and understood," regarding my innovative idea. I am willing to show these to you, Ms. Walton, in a face-to-face meeting. I have not included these documents with this memo, because frankly, I don't know how many eyes will see this memo. I have no way to screen who sees this memo after I send it off, and, as I am sure you can understand, I certainly do not trust people that I do not know. I am concerned that others' dates could be altered in order to facilitate a cover up.

## Why am I writing this letter?

I am requesting a timely, yet fair, investigation. My government had a duty not to disclose my information. I am entitled to know if my confidential information, which I trusted the TSA with, was kept fully confidential. If this information was not kept confidential, I would like to know why my trust was violated, I put my trust and faith in the TSA and the Government of the United States of America. Was this trust taken seriously?

## Why is this issue important to the TSA?

At a time when the TSA desperately needs the support and cooperation of the traveling public to help the TSA carry out its objectives, this issue can severely damage the credibility of an agency with a mission as noble as the TSA's.

The possibility of malfeasance on the TSA's part is quite serious. Not just in terms of liability on the TSA's part, but even more so in terms of the TSA's mission, for which integrity is crucial. When a 22 year old, whose true motivation behind his invention was to help travelers and to help his government, has to write a letter like this, seeking explanation and resolution from his

government, then there is something seriously wrong here. If the TSA violated my trust, then there are much larger implications at stake.

In the event that TSA employees/consultants acted unethically, it will have a serious effect on entrepreneurs' and inventors' willingness to share ideas with the TSA. If innovation stops, the TSA and its mission will be most affected and my personal loss will pale in comparison. The TSA needs America's best and brightest minds to focus on ways to help them with their mission. Without the guarantee that these minds will be able to reap reasonable benefits from their work, no one will be willing to share ideas with the TSA. Ms. Walton, you have a duty to me, to your organization, and to our government to seek out the truth.

### Important Questions I am Raising

*I was told by a TSA employee in writing that my idea is "innovative."*

*Furthermore, it says quite clearly on the TSA website, "If the review determines that a similar service or product is needed and of value to TSA a Contracting Officer will be engaged to begin the procurement process."*

*   When a need suddenly arose for my product, why was I passed over? Why was I not contacted to be given a fair shot to develop The Liberty Lock?

*I was quite surprised and amazed to see that a business consultant, formerly with the TSA is currently directing the Travel Sentry project.*

*   Did this consultant have access to the documents that I sent to the TSA?
*   When did this consultant depart his position at the TSA?
*   Did he depart after my documents were sent to the TSA?
*   Why was he in particular selected for this project?

*According to the Travel Sentry Project Update on the Travel Goods Association website (www.travel-goods.org/travelsentry_update.html), "from meetings with the TSA in Washington it was determined the solution was a system of locks which the TSA can quickly identify and easily open by matching codes between the locks and a secure set of master keys."*

*   Who was at these meetings?
*   Were any TSA employees/consultants which were present at these meetings privy to the confidential information I sent to the TSA?
*   At these meetings, who proposed the ideas behind the Travel Sentry project?
*   Did the person or group of people at these meetings who proposed the ideas behind the Travel Sentry project, have access to my materials?

### Opportunity to show my documents and prove my case

If given the opportunity to show you my documents, you will be amazed at the striking similarity between my lock and the Travel Sentry, purely amazed. Everyone who I have shown my documents to, believes that my idea was stolen. I am asking for an opportunity to show you my documents; to prove my case.

All that I am asking for is a fair shot. I would like a face-to-face meeting with representatives of the TSA. These representatives should have the authority to make amends to the situation. I am not interested in wasting anyone's time, therefore, I only wish to meet with representatives of the TSA who possess the authority to remedy the situation. Furthermore, I want Ms. Audrey Warren, of the Wall Street Journal, and Ms Barbara De Lollis, of USA TODAY, to be present at

any meeting(s), should they wish to attend, in order to insure that the truth is documented. I want the truth to come out and I want to insure that there is integrity in this process.

## Resolution

All that I am asking for is a fair and just solution - a shot to compete with Travel Sentry. My concept, The Liberty Lock, as it will be built, will be superior to Travel Sentry and it will be less expensive – I am ready for some good old fashioned competition – fair and square. This is not an unreasonable request. I simply wish for the same privilege that Travel Sentry is fortunate enough to have. Allow me time to get a team together and setup a competing operation which would pose a serious threat to Travel Sentry – afford me the opportunity to compete with Travel Sentry apples to apples, and let the marketplace decide whose product is superior.

Furthermore, my original proposal to the TSA mentioned that I would be willing to create an American-owned and operated for-profit business which would donate a portion of The Liberty Lock's profits to a worthy cause, such as homeland security. My original offer still stands.

**Kindly contact me in order to arrange a meeting. I can be reached at 347-200-9259 or via email at DTropp@aol.com**

I thank you for your time and I look forward to working with you in seeking out the truth and resolving this issue.

## STEVEN HOROWITZ

COUNSELOR AT LAW
295 MADISON AVENUE
SUITE 700
NEW YORK, NEW YORK 10017
TELEPHONE (212) 667-6800

REGISTERED TO PRACTICE BEFORE
U.S. PATENT & TRADEMARK OFFICE

FACSIMILE (212) 685-6862
E-MAIL: patentattorney@aol.com

November 17, 2003

By Fax and By Fed Ex

John Ware Vermilye
Managing Director
Travel Sentry LLC a/k/a Travel Sentry
2020 Pennsylvania Avenue, Suite 727
Washington, D.C. 20006

Travel Sentry LLC a/k/a Travel Sentry
2228 Fountain Key Circle
Suite 100
Windermere, FL 34786

Re: Misappropriation of David Tropp's Trade Secrets

Dear Mr. Vermilye:

My client, David Tropp, sent a confidential proposal to the Transportation Security Administration ("TSA") detailing his proprietary invention, which is a method of making luggage screening by the TSA more secure while accommodating the needs of the traveler. The idea includes making a special lock available to airline travelers, the special lock having a combination or other lock portion along with a master key lock portion, the master key lock portion receiving a master key that can open the master key lock portion of any special lock of this type. The TSA obtains exclusive access to the master key, although the manufacturers who provide the lock and key can retain access. The special lock is designed to be used on airline luggage and has indicia thereon conveying to luggage purchasers and to the TSA that the luggage can be opened by the master key. Other details and/or variations of the invention were also disclosed to the TSA.

Mr. Tropp, who is in his early 20's, sent his invention proposal to the TSA after seeing on the TSA's web site at page 6 of the TSA's "Unsolicited proposal Manual" section "V. Treatment of Data in Unsolicited Proposals" the fact that disclosure of such proposals should contain a "Required Legend" to the effect that *"this data shall not be disclosed outside the Government and shall not be duplicated, used or disclosed, in whole or in part, for any purpose other than*

-1-

evaluation of the proposal, provided that if a contract is awarded to this offeror as a result of or in connection with the submission of this data, the government shall have the right to duplicate, use, or disclose the data to the extend [sic] provided in the contract. This restriction does not limit the Government's right to use information contained in the data if it is obtainable from another source without restriction. The data subject to this restriction is contained on sheet number(s) ...." This "Required Legend" or a reference to it appears on every page of the invention proposal that Mr. Tropp sent to the TSA last January. Accordingly, the TSA was obligated to maintain Mr. Tropp's invention and trade secret confidentially and not to use it unless an agreement was entered into.

You were a consultant to the TSA with respect to baggage and customer service initiatives during the time Mr. Tropp's idea was submitted to the TSA and undoubtedly had access to Mr. Tropp's innovation. Furthermore, based on information obtained through your web site, it is clear that your involvement with the Travel Sentry checked baggage project began in March 2003, several months after Mr. Tropp submitted the same idea to the TSA. A Press Release dated March 26, 2003 captioned "Travel Sentry launches partnership with the Travel Goods Association (TGA)" downloaded from your web site, states:

"Travel Sentry is a new concept created in cooperation with the US Transportation Security Administration and the Travel Goods Association."

Although the March 26, 2003 Press Release was inexplicably removed from Travel Sentry's web site (and similar one from the TGA's web site) shortly after my client first complained to the TSA about misappropriation in October 2003, my client already had downloaded the revealing information contained therein. In addition, the following statement also appeared on the Travel Sentry web site: "[t]he Travel Goods Association, comprising lock and luggage manufacturers has worked with the Transportation Security Administration to create Travel Sentry and solve the conflicting needs of the government to screen baggage and of the passengers to be able to lock their bags."

Travel Sentry's "new concept" comes directly from David Tropp's confidential invention proposal that he sent to the TSA and that is patent pending. Yet, beginning a few days ago your company, Travel Sentry, has begun providing and certifying a special multi-access lock that is being made available to airline travelers by having manufacturing companies produce for use on airline luggage this multi-access lock that includes a master key lock portion opened by a master key, which master key is exclusively accessible by the TSA. It is apparent that Travel Sentry and you, along with the TSA, misappropriated Mr. Tropp's idea and are continuing to misappropriate it through your company, Travel Sentry, in conjunction with luggage manufacturing companies by using the very same idea submitted by Mr. Tropp to the TSA.

Please be advised that the evidence presented here that the Travel Sentry project is an unlawful misappropriation of Mr. Tropp's confidential invention proposal is only partial. My client and I have other strong evidence of this in our possession which will be provided at the

-2-

proper time.

Travel Sentry's and your own continued misappropriation are unlawful, violate Mr. Tropp's common law trade secret rights and subject you and your company to damages and equitable relief. Moreover, to the extent that Travel Sentry's and your conduct is or was willful, Travel Sentry and you may be subjected to punitive damages. Furthermore, when Mr. Tropp's United States patent on his invention is issued, as we expect it to, Travel Sentry and you will be either engaging in patent infringement or working with entities that are engaging in patent infringement.

Travel Sentry's and your actions are continuing and subject both of you to accumulating damages and the award of injunctive relief, including preliminary injunctive relief. Consequently, it is hereby demanded of Travel Sentry and of you to immediately cease and desist from any further implementation of the Travel Sentry project and use of David Tropp's misappropriated invention since this project unlawfully uses Mr. Tropp's proprietary (and patent pending) method of luggage inspection that he disclosed to the TSA, the very agency that helped create Travel Sentry according to Travel Sentry's web site.

In order to ensure you the maximum opportunity to resolve this matter prior to litigation, Mr. Tropp will give Travel Sentry a short opportunity from its receipt of this letter in which to respond to this letter in a manner that makes it clear that Travel Sentry and you fully respect Mr. Tropp's intellectual property rights. Please be advised that short of this, I have been instructed to take all steps necessary in order to protect Mr. Tropp's intellectual property rights, including, if necessary, commencing litigation and requesting preliminary injunction relief.

Please be advised that Mr. Tropp expressly reserves all of his rights in regard to this matter and this letter shall not constitute or be construed to in any way constitute a waiver of any rights of Mr. Tropp.

Very truly yours,

Steven Horowitz

# STEVEN HOROWITZ

COUNSELOR AT LAW
295 MADISON AVENUE
SUITE 700
NEW YORK, NEW YORK 10017
TELEPHONE (212) 867-6900

REGISTERED TO PRACTICE BEFORE                                    FACSIMILE (212) 885-6082
U.S. PATENT & TRADEMARK OFFICE                                  E-MAIL: patentattorney@aol.com

November 19, 2003

By Fax and By Fed Ex

Thomas D. Melkus
Managing Director
CCL Security Products
301 West Hintz Road
Wheeling, Illinois 60090

Re: Misappropriation of David Tropp's Trade Secrets

Dear Mr. Melkus:

My firm represents David Tropp in connection with CCL Security Products' ("CCL")
involvement in the misappropriation of his invention. Mr. Tropp sent a confidential proposal to
the Transportation Security Administration ("TSA") detailing his proprietary invention, which is a
method of making luggage screening by the TSA more secure while accommodating the needs of
the traveler. The idea includes making a special lock available to airline travelers, the special lock
having a combination or other lock portion along with a master key lock portion, the master key
lock portion receiving a master key that can open the master key lock portion of any special lock
of this type. The TSA obtains exclusive access to the master key, although the manufacturers
who provide the lock and key can retain access. The special lock is designed to be used on airline
luggage and has indicia thereon conveying to luggage purchasers and to the TSA that the luggage
can be opened by the master key. Other details and/or variations of the invention were also
disclosed to the TSA.

Mr. Tropp, who is in his early 20's, sent his invention proposal to the TSA after seeing on
the TSA's web site at page 6 of the TSA's "Unsolicited proposal Manual" section "V. Treatment
of Data in Unsolicited Proposals" the fact that disclosure of such proposals should contain a
"Required Legend" to the effect that *this data shall not be disclosed outside the Government
and shall not be duplicated, used or disclosed, in whole or in part, for any purpose other than
evaluation of the proposal, provided that if a contract is awarded to this offeror us a result of or
in connection with the submission of this data, the government shall have the right to duplicate,
use, or disclose the data to the extend [sic] provided in the contract. This restriction does not*

-1-

Case 1:05-cv-02338-JG-KAM  Document 1

limit the Government's right to use information contained in the data if it is obtainable from another source without restriction. The data subject to this restriction is contained on sheet number(s) ...." This "Required Legend" or a reference to it appears on every page of the invention proposal that Mr. Tropp sent to the TSA last January. Accordingly, the TSA was obligated to maintain Mr. Tropp's invention and trade secret confidentially and not to use it unless an agreement was entered into.

Your company, CCL, through its membership in the Travel Goods Association, is currently participating in the Travel Sentry project that was launched in partnership with the Travel Goods Association and the TSA. Its participation involves manufacturing and providing to the TSA either directly or else indirectly through Travel Sentry's assistance the special lock and master key that is used in the proprietary method that Mr. Tropp invented and disclosed to the TSA

Based on information obtained from the Travel Sentry and Travel Goods Association web sites, it is clear that CCL's involvement with the Travel Sentry checked baggage project began no earlier than March 2003, several months after Mr. Tropp submitted the same idea to the TSA. A Press Release dated March 26, 2003 captioned "Travel Sentry launches partnership with the Travel Goods Association (TGA)" downloaded from the Travel Sentry web site, states:

"Travel Sentry is a new concept created in cooperation with the US Transportation Security Administration and the Travel Goods Association."

In addition, the following statement also appeared on the Travel Sentry web site: "[t]he Travel Goods Association, comprising lock and luggage manufacturers has worked with the Transportation Security Administration to create Travel Sentry and solve the conflicting needs of the government to screen baggage and of the passengers to be able to lock their bags."  CCL is a member of the TGA and is participating in the Travel Sentry project.

The TSA-Travel Sentry so-called "new concept" that CCL is participating in comes directly from David Tropp's confidential invention proposal that he sent to the TSA and that is patent pending. Beginning a few days ago your company, CCL, has begun providing a special multi-access lock that is being made available to airline travelers for use on airline luggage that includes a master key lock portion opened by a master key, which master key is exclusively accessible by the TSA. The lock you are producing and selling, of which I have a specimen, contains indicia thereon conveying to luggage purchasers and to the TSA that the luggage can be opened by the master key. CCL is also providing the master key used in the proprietary method so that the TSA's baggage screeners can open the master key lock portion of the special lock. It is apparent that by doing so your company is participating in the unlawful misappropriation of Mr. Tropp's proprietary idea and method of luggage inspection along with the TSA and Travel Sentry with the help of luggage manufacturers operating through the Travel Goods Association. The Travel Sentry baggage idea is the very same idea submitted by Mr. Tropp to the TSA.

-2-

Please be advised that the evidence presented here that the Travel Sentry project is an unlawful misappropriation of Mr. Tropp's confidential invention proposal is only partial. My client and I have other strong evidence of this in our possession which will be provided at the proper time.

CCL's continued participation in this misappropriation is unlawful, violates Mr. Tropp's common law trade secret rights and subjects your company to an injunction and possibly damages. Furthermore, when Mr. Tropp's United States patent on his invention is issued, as we expect it to, CCL will be engaging in direct or contributory patent infringement. Consequently, it is hereby demanded of CCL to immediately cease and desist from any further implementation of the Travel Sentry project and use of David Tropp's misappropriated invention since this project unlawfully uses Mr. Tropp's proprietary (and patent pending) method of luggage inspection that he disclosed to the TSA.

In order to ensure you the maximum opportunity to resolve this matter prior to litigation, Mr. Tropp will provide CCL with a short opportunity from its receipt of this letter in which to respond to this letter in a manner that makes it clear that it fully respects Mr. Tropp's intellectual property rights. Please be advised that short of this, I have been instructed to take all steps necessary in order to protect Mr. Tropp's intellectual property rights, including, if necessary, commencing litigation and requesting preliminary injunction relief.

Please be advised that Mr. Tropp expressly reserves all of his rights in regard to this matter and this letter shall not constitute or be construed to in any way constitute a waiver of any rights of Mr. Tropp.

Very truly yours,

Steven Horowitz

-3-



DTropp@aol.com

12/08/2003 03:02 PM

To: Michael Anthony/EXEC/Nashua/Brookstone@Brookstone
cc: Philip Roizin/EXEC/Nashua/Brookstone@Brookstone
Subject: TSA's Travel-Sentry Project

Dear Mr. Anthony,

Several months back, I sent a letter to Philip Roizin???s residence. My intention was that you would see that letter, so that I could inform you of an investigation that I requested of the TSA???s Travel Sentry Project. I trust that you received my message about my invention and the misappropriation of my intellectual property.

As luck would have it, it has recently come to my attention that a close friend of my family lives down the road from you; Dr. Ray Soneira of 13 Chestnut Hill Road. Ray has told me that there???s about a half-mile stretch between your houses, and that the man that plows his driveway also plows your driveway. At Ray???s suggestion, I???m reaching out to you.

Travel Sentry???s attorney has threatened that if I contact you, then I will be sued. Please understand that I am exposing myself to risk by contacting you. But at the same time you must also understand how much confidence I have in my position. Travel Sentry???s arguments are weak and they can only threaten because the facts are against them.

May I make a suggestion? Before I get this injunction to stop the Travel Sentry Project, I believe that you and I should meet. I???m willing to show you my proof in a face-to-face meeting. Not only are the facts and legal rights on my side, but this story is going to play out in the press and it will be great publicity for Brookstone if your company helps to right a wrong. If we come to an understanding now, then I am confident that there will be a mutually-beneficial deal later.

Please call me at 347-200-9259 to set this up.

Yours Truly,

David A. Tropp
Inventor
The Liberty Lock

## FROM THE DESK OF DAVID A. TROPP

| | |
|---|---|
| **TO:** | MICHAEL F. ANTHONY, PRESIDENT & CEO, BROOKSTONE COMPANY, INC. |
| **FROM:** | DAVID A. TROPP, INVENTOR, THE LIBERTY LOCK |
| **SUBJECT:** | MEETING |
| **DATE:** | 12/8/2003 |

Dear Mr. Anthony,

Several months back, I sent a letter to Philip Roizin's residence. My intention was that you would see that letter, so that I could inform you of an investigation that I requested of the TSA's Travel Sentry Project. I trust that you received my message about my invention and the misappropriation of my intellectual property.

As luck would have it, it has recently come to my attention that a close friend of my family lives down the road from you; Dr. Ray Soneira of 13 Chestnut Hill Road. Ray has told me that there's about a half-mile stretch between your houses, and that the man that plows his driveway also plows your driveway. At Ray's suggestion, I'm reaching out to you.

Travel Sentry's attorney has threatened that if I contact you, then I will be sued. Please understand that I am exposing myself to risk by contacting you. But at the same time you must also understand how much confidence I have in my position. Travel Sentry's arguments are weak and they can only threaten because the facts are against them.

May I make a suggestion? Before I get this injunction to stop the Travel Sentry Project, I believe that you and I should meet. I'm willing to show you my proof in a face-to-face meeting. Not only are the facts and legal rights on my side, but this story is going to play out in the press and it will be great publicity for Brookstone if your company helps to right a wrong. If we come to an understanding now, then I am confident that there will be a mutually-beneficial deal later.

Please call me at 347-200-9259 to set this up.

Yours Truly,

David A. Tropp
Inventor
The Liberty Lock

TEL. 347-200-9259

EMAIL: DTROPP@AOL.COM